WILLIAM G. ZINN et al., Respondents, v. THE NEW JERSEY
STEAMBOAT COMPANY, Appellant.

A common carrier has not performed his contract as carrier until he has deliv-
ered or offered to deliver the goods to the consignee, or done what the law
esteems equivalent to delivery. When the consignee is unknown to the car-
rier, a due effort to find him and notify him of the arrival of the goods is
a condition precedent to the right to warehouse them; and if a reason-
able and diligent effort is not made, the carrier is liable for the conse-
quences of the neglect. What is due and reasonable effort and diligence
depends upon the circumstances of each case, and is a question of fact
for the jury.

Where, because of neglect of the carrier to find the consignee, and the conse-
quent delay in delivery of the goods, they have depreciated in value, the
fact that the consignee after receiving notice neglects to remove them in
a reasonable time does not raise a question of concurrent negligence.
After such notice and reasonable time, the goods are at the risk of the
owner, and the carrier is not liable for subsequent depreciation. The
duties of carrier and consignee are not concurrent, but in succession, that
of the latter growing out of the performance of duty by the former, and
their acts of negligence cannot contribute to the same injury.

(Argued May 3, 1872; decided May 21, 1872.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, in favor of plaintiffs,
entered upon an order denying motion for a new trial and
directing judgment upon a verdict.

This is an action to recover damages alleged to have been
sustained by plaintiffs in consequence of defendant's neglect
to fulfill the obligations resting upon it as a common carrier.

On the 15th day of October, 1866, the firm of T. C. Wood
& Co., of Augusta, Michigan, shipped to the respondents by
the Michigan Central Railroad Company two boxes of mer-
chandise, marked "Zinn, Aldrich & Co., New York."

On the 27th day of October, 1866, they were delivered to
defendants at the city of Albany to carry to the city of New
York. The goods arrived in New York on the 28th of Octo-
ber. Defendant made no personal delivery of them to plain-
tiffs, and sent them no notice of the arrival of the goods. On

the 30th of October the goods were taken from the dock by the carman of the appellants and stored with Sharp & Parsons, public warehousemen, at No. 357 Washington street, in the city of New York.

Plaintiffs occupied the stores Nos. 80 and 82 Leonard street, New York city. They were dry goods jobbers and shippers of goods. The appellant did not inquire for Zinn, Aldrich & Co., of any person by the name of Zinn. The first information plaintiffs received that the goods had arrived was on the 16th of February, 1867. They received them on or about the 15th of April, 1867, from Sharp & Parsons. The goods had depreciated in value before notice, and were worth less on the 15th of April than on the 16th of February.

On these facts the jury found a verdict for respondents for $430.69. Defendant's counsel moved for a new trial on the judge's minutes, which was denied, and on motion of appellant's counsel it was ordered that the exceptions herein be heard in the first instance at General Term.

*W. P. Prentice* for the appellant.

*Henry N. Beach* for the respondents. Appellant's exceptions to the rulings of the court cannot be sustained, not being specific. (*Fountain* v. *Pettee*, 38 N. Y. R. 184; *Mallory* v. *Perkins*, 9 Bosw., 572; *Jackson* v. *Hobby*, 20 Johns., 357; *Elwood* v. *Diefendorf*, 5 Barb., 398; *Pearson* v. *Fiske*, 2 Hilt., 146; *Binsse* v. *Wood*, 37 N. Y., 526.) The question of negligence was for the jury to decide. (*Harris* v. *N. J. R. R. Co.*, 20 N. Y., 238.) Appellant waived its exception to the judge's refusal to nonsuit plaintiffs by putting in further evidence. (*Colegrove* v. *H. and N. H. R. R. Co.*, 6 Duer, 382.) Notice to the owner or consignee of the arrival of goods and a reasonable time and opportunity after notice to remove them are in lieu of personal delivery so far as to change the strict liability of the carrier to that of a warehouseman. (*McDonald* v. *West. R. R. Corp.*, 34 N. Y. R., 501; *Northrop* v. *S. B. and N. Y. R. R. Co.*, 2 Tiff. Op., 186,

188; *Fenner* v. *B. and S. L. R. R. Co.*, 44 N. Y. R., 505; *Redmond* v. *Liv., etc., Steamship Co.*, 56 Barb., 320; *Cook* v. *Erie Railway Co.*, 58 id., 312, 324; *Hedges H. R. R. R. Co.*, 6 Robt., 119; *Witbeck* v. *Holland*, 45 N. Y. R., 13.) The negligence of respondents, which could prevent their recovery, must be such as alone produced the loss without the fault of the appellant. (Redfield on Carriers, 155, note 15.)

ALLEN, J. Commom carriers assume not only the safe carriage and delivery of property to the consignee, but also that merchandise and other property received by them for transportation shall be carried to the place of destination and delivered with reasonable dispatch; and for any unreasonable delay, either in the transportation or its delivery after its arrival at the terminus of the route, they are responsible. (*Hand* v. *Baynes*, 4 Whart., 204; *Raphael* v. *Pickford*, 6 Scott Ch. N. R., 478; *Blackstock* v. *N. Y. and E. R. Co.*, 20 N. Y., 48; *Black* v. *Baxendale*, 1 Exch., 410.) The liability of the carrier to answer for the non-delivery of goods, or the want of reasonable expedition in their delivery, after their arrival at the place of their destination, was not controverted upon the trial.

The defendant in this action was not bound to deliver the merchandise to the consignees at their place of business. A delivery or offer to deliver at the wharf would have discharged the carrier from all responsibility as such carrier. Carriers by water or railroad are not held to a delivery of goods to the consignees at any place other than at the wharf of the vessel or the railroad station, and a notice to the consignee of the arrival of the goods, and of a readiness to deliver, comes in place of a personal delivery, so far as to release the carrier from the extraordinary and stringent liability incident to that class of bailees. (*Gibson* v. *Culver*, 19 W. R., 305; *Fisk* v. *Newton*, 1 Den., 45; *Fenner* v. *Buff. and St. L. R. Co.*, 44 N. Y., 505.)

If the consignee is present the goods may be tendered or delivered to him personally, and he is bound to remove them within a reasonable time. If he is not present he is entitled

to reasonable notice from the carrier of their arrival, and a fair opportunity to take care of and remove them. If the consignee is unknown to the carrier, the latter must use proper and reasonable diligence to find him; and if, after the exercise of such diligence, the consignee cannot be found, the goods may be stored in a proper place, and the carrier will have performed his whole duty, and will be discharged from liability as a carrier. But for want of diligence in finding the consignee and giving notice of the arrival of the goods, the carrier is liable for the damages resulting from a delay in the receipt of the goods by the consignee, occasioned by such want of diligence. He can only relieve himself from liability by storing the goods, after, by the use of reasonable diligence, he is unable to find the consignee. (*Witbeck* v. *Holland,* 45 N. Y., 13.) A common carrier has not performed his contract as carrier until he has delivered or offered to deliver the goods to the owner, or done what the law esteems equivalent to a delivery. (*Smith* v. *Nassau and Lowell R. R. Co.,* 7 Foster R., 86; *Price* v. *Powell,* 3 Comst., 322.) When the consignee is unknown to the carrier, a due effort to find him is a condition precedent to a right to warehouse the goods, and, as notice to the consignee, takes the place of a personal delivery of the goods, and as a due and unsuccessful effort to find the consignee will alone excuse the want of such notice, it follows that if a reasonable and diligent effort is not made to find the consignee, the carrier is liable for the consequence of the neglect. What is a due, a reasonable effort, and what is proper and reasonable diligence, depends necessarily very much upon the circumstances of each case, and, in the nature of things, is a question of fact for the jury, and not of law for the court. What would be reasonably sufficient in one place might be entirely inadequate and insufficient in another, and the extent and character of the inquiries to be made, in the exercise of a reasonable diligence on the part of the carrier, cannot be regulated or prescribed by any fixed standard, as the standard must shift with the varying circumstances of each case. The law cannot and does not

define the measure of duty, making it the, same in all cases and under all circumstances, in cases like the present; and, therefore, the question whether the defendant did use proper and reasonable diligence to find the consignee was properly submitted to the jury. ( *Witbeck* v. *Holland, supra; Westchester and Phila. R. R. Co.* v. *McElwee*, 67 Penn. St. R., 311; *Hill* v. *Humphreys*, 5 W. & S., 123.)

The motion for a nonsuit at the close of the plaintiffs' case was properly denied. It had then been proved that the goods had been brought to New York by the defendant as a common carrier, and been put in store; that the plaintiffs, the consignees, had had no notice or knowledge of their arrival or of their storage, and that between the time of their landing in New York and their receipt by the plaintiffs they had greatly depreciated in value. No attempt had been made to show notice of the arrival of the goods, or that the consignees were unknown or could not be found.

The doctrine of concurrent negligence has no application to the case. It was several weeks after the landing of the goods from the defendant's steamer on the wharf in New York that the plaintiffs learned or knew of their arrival, in any view of the evidence, and at that time the goods had become, in a measure, unsalable, and their market value was diminished. From the time the plaintiffs had notice of the arrival of the goods and that they were subject to their orders, and a reasonable time had elapsed for their removal, they were at the risk of the plaintiffs, and no liability attached to the defendant for subsequent depreciation in value. The concurrent acts of the plaintiffs and defendant could not contribute to the same injury; their duties were not concurrent but in succession. The defendant's duty was to give the plaintiffs notice or make due diligence to find them, and until that was done the goods were at its risk; and when the duty was fully performed and the goods put in store, the liability of the carrier ceased, and the risk of loss by depreciation in value was upon the plaintiffs. The duty and liability of the one grew out of the performance of duty by the other.

The defendant gave evidence of all that was done to find the consignees, and the effort made was very slight, and would not have justified the court in ruling, as matter of law, that due and reasonable diligence had been used for that purpose. The inquiries made were casual, and no serious attempt was made to find the consignees or to give them notice of the arrival of the goods. Indeed, on cross-examination, the freight agent of the defendant testified that it was not their custom to give notice to the people in the city, and doubtless the agents and servants of the company acted under a mistake as to the duty and legal liability of the carrier.

There was no question touching the extraordinary liability of carriers in the case. The claim was not against the defendant as an insurer of the safety of the property, but for want of ordinary and reasonable diligence in the performance of a duty resulting by implication from the contract of carriage. The judge, therefore, properly refused to instruct the jury upon the subject of the extraordinary liability of the defendant as a common carrier. As the goods had been shipped from Michigan by railroad, and the plaintiffs had no knowledge that they had been transferred to the defendant at Albany, and were not expecting them by steamboat, there was no occasion for them to be on the look-out for them on the defendant's wharf, or on the arrival of the boats of the company. There was nothing to justify the submission of any question to the jury on this branch of the case. There was no complaint, or reason for complaint, of the manner in which the cause was submitted to the jury, and the verdict is conclusive upon the questions of fact.

The judgment must be affirmed.

All concur, except PECKHAM, J., not sitting, and GROVER, J., not voting.

Judgment affirmed.